87 635
d102 78

CASE 95—PETITION EQUITY—DECEMBER 6.

# City of Newport v. Ringo's Executrix.

APPEAL FROM CAMPBELL CIRCUIT COURT.

1. TAXES PAID UNDER A MISTAKE of law may be recovered back.
2. MUNICIPAL TAXATION.—The charter of the city of Newport, as amended in 1874, provides that the city council shall have power to cause to be annually levied and collected an *ad valorem* tax on the "real, personal and mixed estate within the limits of said city subject to taxation by the city under the laws of the State;" and further provides that the assessor shall assess all property in said city "subject to taxation under the provisions of this charter and the laws of the State." *Held*—That under these provisions the city is authorized to tax money and choses in action as well as visible personal property.
3. SAME.—The legal situs of money and choses in action is the domicile of the owner, and although the charter of the city authorizes the taxation of only such property as is "within the limits of the city," it includes all such property owned by persons who reside within the city.

E. W. HAWKINS FOR APPELLANT.

1. Appellant has power under its charter to tax bonds, notes and choses in action. (Act approved February 18, 1860; Act approved February 17, 1874; Auditor v. Trustees of Frankfort, 81 Ky., 681; Trigg v. Glasgow, 2 Bush, 295.)
2. Choses in action are taxable wherever the owner resides. (Baldwin v. Shine, 8 Ky. L. R.)
3. Taxes voluntarily paid by way of compromise or with knowledge that they are not legally collectible, and paid without coercion, can not be recovered. (City of Louisville v. Anderson, 79 Ky., 334.)

CHAS. J. HELM FOR APPELLEE.

The act of February, 1860, authorizing taxation of choses in action, was repealed by the act of February 17, 1874. (Johnson v. City of Lexington, 14 B. M., 521; City of Covington v. Powell, 2 Met., 228; City of Louisville v. Henning, 1 Bush, 381.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellee sues to recover taxes paid by her to the appellant upon its demand, the assessment and collec-

tion of which she avers were unauthorized by law, but not then known to be so by her. The property upon which they were assessed consisted of choses in action upon non-residents of the city, and stocks in corporations existing elsewhere.

The city charter, by way of compulsion, provides a penalty for default of payment by a certain time.

It is too well settled in this State to need the citation of authority, that if money be paid through a clear mistake of law or fact, essentially affecting the rights of the parties, and which in law or conscience was not payable, and should not be retained by the party receiving it, it may be recovered. Both law and sound morality so dictate. Especially should this be the rule as to illegal taxation. The tax-payer has no voice in the imposition of the burden. He has the right to presume that the taxing power has been lawfully exercised. He should not be required to know more than those in authority over him, nor should he suffer loss by complying with what he *bona fide* believes to be his duty as a good citizen. Upon the contrary, he should be prompted to its ready performance by refunding to him any illegal exaction paid by him in ignorance of its illegality ; and, certainly, in such a case, if he be subject to a penalty for non-payment, his compliance under a belief of its legality, and without awaiting a resort to judicial proceedings, should not be regarded in law as so far voluntary as to affect his right of recovery.

The appellee having the right to sue, the first question to be considered is whether the city had the power to assess and collect these taxes. If so, it is decisive of

this appeal, and consideration of the other questions presented is unnecessary.

The act of February 17, 1874, revisory and amendatory of its charter, provides:

"SEC. 7. Said board shall also have power to cause to be annually levied, collected and paid into the city treasury, an *ad valorem* tax on the *real, personal and mixed estate* within the limits of said city subject to taxation by the city, *under the laws of the State*, except as hereinafter provided. Said tax shall not exceed two dollars on each one hundred dollars valuation, at a fair cash value, upon *every class or description of property*."        *        *        *

"SEC. 32.        *  .  *        *        He (the assessor) shall, as soon as practicable, after the 10th day of January in each year, in a fair and impartial manner, assess at a fair cash value all property in said city subject to taxation under the provisions of this charter *and the laws of the State*."        *        *        *

It is contended by the appellee that the term "personal estate" does not embrace property such as was assessed in this instance, but must be confined in its operation to such as is visible.

The justice or policy of the grant of power, whether thus confined or not, is not for our consideration save so far as we may properly consider it in arriving at a proper construction of the law. We are to determine what power the Legislature has in fact seen proper to confer.

If the charter does embrace such property, then the fact that it speaks of such as is "within the limits of said city" does not exempt this property from taxa-

tion, because the title was in the appellee, who resided in the city, thus fixing its legal *situs* there. Property of this character follows the person of the owner, and its locality in law is his domicile. *Mobilia sequuntur personam.*

The counsel for the appellee claims that his view is supported by the cases of Johnson v. City of Lexington, 14 B. M., 521 ; City of Covington v. Powell, 2 Met., 226, and City of Louisville v. Henning & Speed, 1 Bush, 381.

In the first named case it was held that the power " to assess, levy and collect taxes on such *real and personal estate* as they may designate," did not embrace money, debts and choses in action belonging to the inhabitants of the city of Lexington. Its charter was passed in 1831. Taxation of such property through what is known as the equalization law was first adopted in 1837, and the court in its opinion says : " It can not therefore be presumed that the State then intended to confer on the city authorities a power of taxation which it did not itself exercise."

It is true an amendment using similar language to the original charter, was enacted after the adoption of an equalization law, and that it was in force at the time of this decision; but the court said : "If this power was not conferred by the original charter, it can not, by any fair rule of interpretation, be assumed that it was conferred by the same language in the amended charter."

The same interpretation was, however, subsequently given to a like clause in the charter of the city of Covington in the second case named, and was again re-

affirmed in the case last cited, as to a substantially similar provision in the charter of the city of Louisville. So that if the charter now in question merely gave the power "to assess, levy and collect taxes on such real and *personal* estate" as the city council might direct, and said nothing further, we should feel bound to follow the rule established by the cases above cited.

The intention of the law-making power must be regarded in construing a statute. This is the underlying rule of construction. It is to be gathered from the entire act.

All of its language must be taken into consideration. In arriving at it, it is proper to regard the law existing at the time of its passage.

The act of 1860 amending the charter of the appellant, provided: "The city council has power to levy and provide for the collection of *ad valorem* taxes for general city purposes upon all real estate and slaves in the city, and *ad valorem* or specific taxes upon all personal property in the city, as well as money or choses in action belonging to the inhabitants."

It is unnecessary to determine whether this act was repealed by the one passed in February, 1874, or not, owing to the conclusion we have reached as to the power conferred by the latter; but if, as the appellee contends, it was, then it seems unlikely that the Legislature would, in the subsequent legislation, have released money, debts and choses in action from taxation. Undoubtedly the city would have objected to it.

Many thousands of dollars of the property of its citizens were of course so invested; and the withdrawal

of its power to tax it would have involved a serious diminution of its revenue. Moreover, in such an event, while the poor man would be taxable upon his little visible personal property, his more wealthy neighbor, who might be able to keep his means invested in stocks and bonds, would, as to it, go untaxed.

Do the provisions of the act of 1874 then embrace property of the last-named description?

In the first place, it is noticeable that the law uses the word "*estate*," which is ordinarily one of broad meaning. It is true, it is sometimes used in a limited sense, as in case of an execution, which by its direction is to be levied of the defendant's estate, and yet choses in action can not be reached thereunder; and that it was the term used in the city charters that were under consideration in the cases above cited; but it is merely one of other *indicia* of the legislative intent contained in the act now under consideration. It also, with a seeming view of embracing all property, save such as might be exempt from taxation, provides for a tax upon "*real, personal* and *mixed* estate." Terms more comprehensive in meaning, as generally understood, could hardly have been found. It would, perhaps, have been impossible to have been more explicit without enumerating specifically each and every subject of taxation. Not only, however, does it give the power to tax real, personal and mixed estate, but it includes all that is "subject to taxation by the city, *under the laws of the State;*" and in section 32 *supra,* relating to the assessor, it is provided that he shall assess "*all* property in said city, subject to taxation, under the provisions of this charter, and the laws of the State."

When this statute was enacted, choses in action and money were taxable at least *sub modo* under the equalization law. It is urged, however, that if it had in this instance been intended to embrace them, provision would have been made for the deduction by the taxpayer of his indebtedness, as was then allowable under the State law. This, however, is not to be presumed. The present State law does not permit it.

Nor is this all. Section 7 further says: "Said tax shall not exceed two dollars on each one hundred dollars valuation, at a fair cash value, upon every class or description of property."

It is suggested that this provision, as well as that directing the assessor to assess "all property in said city subject to the taxation under the provisions of this charter, and the laws of the State," confer no additional power to tax. That they simply mean that the tax shall be so much upon every class or description of property of the character theretofore named, and that it, or so much of it as was subject to taxation under the charter, and also under the State laws, shall be assessed..

Even if it be true that no further meaning can fairly be drawn from them, yet when all of the provisions of the charter to which we have referred are considered together, the case is distinguishable from those above cited, and it is manifest to our minds that it was the legislative intention to still leave with the city the power to tax such property as that now under consideration, and that the act in question should be so construed.

The case was disposed of below upon demurrer. It

is possible the appellee may be able to show that the property, or some of it, upon which the taxes were paid, was exempt, or that the taxes were paid elsewhere; and present such a state of case as to authorize their repayment.

The judgment is, therefore, reversed, with leave to the appellee to amend her pleadings, if she so desires, and set up any such ground, if there be any, for the recovery of the taxes; and for further proceedings consistent with this opinion. If she does not do so, however, within a reasonable time, the action will be dismissed.