MINER et al., Appellants, v. CLIFTON TOWNSHIP et al., Respondents.

(137 N. W. 585.)

1.  **Taxation—Recovery Back—Verbal Protest—Invalid Tax.**

Where taxes, paid with knowledge of all facts concerning levy, are sought to be recovered back, a mere verbal protest against the validity of the taxes, without stating any reason, is insufficient to preserve taxpayer's right to enforce repayment.

2.  **Taxation—Invalid Taxes—Protest—Conditions to Repayment—Voluntary Payment.**

To preserve his right to recovery back of invalid taxes paid by one who knows the facts rendering the tax invalid he must not only protest, stating the reasons therefor, but must wait until active steps to enforce payment are taken, before he pays the tax.  Payment under any different circumstances, except under duress and under proper protest, is voluntary.

3.  **Taxation—Invalid Taxes—Recovery Back—Ignorance of Facts—Public Policy.**

Where taxes are not such as could not have been legally levied, the mere fact that township taxpayers did not know, when they voluntarily paid taxes, that more taxes were levied than were authorized by the electors does not entitle them to repayment.  The public records show invalidity of attempted levies, and public policy requires that taxpayer be presumed to know facts appearing of record.

Corson and Haney, J. J., dissenting.

(Opinion filed October 1, 1912.)

Appeal from Circuit Court, Beadle County.   Hon. ALVA E. TAYLOR, Judge.

Action by Charles Miner and others against Clifton Township and others, to recover back taxes alleged to have been paid by plaintiffs in ignorance of the facts concerning the levy, etc., and for an injunction, etc. From a judgment in favor of the defendants, plaintiffs appeal. Affirmed.

*Null & Royhl,* for Appellants.

In this case it appears that at the annual town meeting a tax of $800.00 for all purposes was voted.

This tax was made up and sent out to the road overseers and worked out.

The town clerk at the request of the Supervisors made a certificate and filed it with the county auditor, showing a levy of $800.00 for township purposes and $100.00 for road tax. This tax was not voted or authorized by the town meeting.

The tax payers have paid this tax to the county treasurer, and he in turn has paid it over to the town treasurer.

The Plaintiffs and others associated with them in the prosecution of this action, paid this tax to the county treasurer in entire ignorance of its invalidity.

Sec. 1008 Political Code, defines the power of the electors at the town meeting. Subdivision 8 relates to the voting of taxes, etc.

Sec. 2138 provides for the tax levies and limits the board to the taxes voted at the town meeting.

Sec. 1109. The clerk shall notify the county auditor of taxes levied by the board.

Under these statutes, it is clear that the only lawful method of raising money for township purposes is:

First—The town meeting votes to raise the particular sums of money for the particular objects.

Second—The town Board levies a tax which will yield the money so voted.

Third—The clerk certifies the levy to the county auditor.

In the case at bar, the money was not voted at the town meeting, neither was the tax levied by the board at a meeting of the board.

Thus it is seen that the only foundation for the tax was the false certificate purporting to be made by the town clerk.

It is fundamental that a tax levy is jurisdictional to existence of a tax. It must be levied in substantial compliance with the statute.

Plaintiffs being in entire ignorance of the illegality of the tax, not in matters of law, but ignorant of the facts, they can recover even though they did not protest against the tax at time of payment. Bruecher v. Port Chester, 101 N. Y. 240; Galveston v. Snyder, 39 Texas, 236; Baker v. Panola Co., 30 Texas, 86; New Port v Ringo, (Ky.) 10 S. W. 2; Cooley on Taxation, 805.

This being an equitable action, the court is in position to make such disposition of the funds as justice may require. Two solutions are suggested: First—to return to each tax payer the money paid in by him, Second—to direct the treasurer to hold the fund intact until the next annual meeting to be then appropriated by the town meeting in lieu of a tax levy next year. Either course will be satisfactory to Plaintiffs.

C. A. Kelley, James Byrnes and O. S. Hagen, for Respondents.

The statement in the brief of appellants is as follows: "Two solutions are suggested: First—To return to each taxpayer money paid by him.

Second—To direct the Treasurer to hold the funds intact until the next annual meeting to be then appropriated by the town meeting in lieu of a tax levy next year. Either course will be satisfactory to Plaintiffs." This is in effect what the Court did by its restraining order. Thus the finding complained of was one favorable to Appellants; and it is a well settled rule of law that one cannot assign as error that which is in his favor. Gaines v. White, 1 S. D. 434.

Courts of equity do not sit to reverse or correct errors and mistakes of law; to be entitled to their assistance the party applying must show that he is in danger of unjustly losing a substantial right, and that he is not in fault. Warden et al. v. Board of Supervisors, 14 Wis. 672; State ex rel. School District v. Johnson, 80 N. W. 1105 (Wis.). Can it be said that the Appellants who with knowledge of the facts complained of voluntarily

paid the taxes in question were not at fault in so doing? And did they not have an adequate remedy at law? Section 1004 and 1096 of the Political Code.

A court of equity lends its aid only to the vigilant, active and faithful, and a tardy application such as is shown in this case will not be tolerated. See Sheldon v. Rockwell et al. 9 Wis. 158 and cases therein cited. Appellants should have at once taken steps such as would be effective, on being advised of the alleged illegal proceedings complained of, prior to the payment of such taxes, and the intermingling said funds with the funds of the County and those of the Township. This Court must assume that the facts were known to appellants.

Now while the tax levy in question was somewhat irregular there is no showing or finding in this case that the tax levy was void.

There is no showing in this case that any officer of the Board has in any manner acted fraudulently in connection with these tax proceedings, and the presumption is that the tax levy is valid. Farrington v. New England Co. et al., 45 N. W. 191 (N. D.) at page 93.

But even if the tax levy in this case was void the Appellants cannot recover back the money they voluntarily paid without protest; and particularly they cannot maintain this kind of an action to recover it. See Trustees of Jackson Township et al. v. Thomas et al., 37 N. E. 523; also St. Anthony & D. Elevator Co., v. Siucie et al., 83 N. W. 212 at page 213. Appellants by their payment of said taxes voluntarily acquiesced in the collection thereof and were afterwards not in position to reclaim the same by injunction. State ex rel. School District v. Johnson, 80 N. W. 1105. See, also, Schaffner v. Young, Sheriff, 86 N. W. 733, and Chicago & N. W. Ry. Co. v. Rolfson, 122 N. W. 343.

WHITING, J. This is an appeal by the plaintiffs from a judgment in favor of the defendants. The action was brought to recover from the defendant township certain moneys which had been paid by plaintiff as taxes, and injunctional relief was also sought; it being asked that defendant corporation be restrained from paying defendant Bloodgood an amount claimed by him as the contract price for certain roadwork which he had done. There being no question raised upon the pleadings, or upon the suffi-

ciency of the evidence to support the findings of the court, the sole question before us is the sufficiency of the findings to support the conclusions of law and judgment of the trial court.

Under the statutes of this state, the electors of a township, at the annual town meeting, vote the amount of taxes to be raised for the ensuing year, fixing the amount to be raised for each of several purposes mentioned in such statutes. After such vote the town board makes the levies thus authorized, and their clerk certifies the levies (specifying the purposes thereof and amount levied for each .purpose) to the county auditor, excepting that he certifies the levy for road purposes to the several road overseers. The taxes thus certified to the auditor go upon regular tax list, and are collected by the county treasurer. Those certified to the road overseers are collected either in money or in work.

The trial court found that at the town meeting "$800 for all town levy was agreed upon," but no other levy authorized; that the township clerk certified to the county auditor a levy of $100 for general purposes and $800 for road and bridges; that such clerk certified to the several road overseers a levy of $800 for road purposes; that the plaintiffs, either in work or money, paid to the road overseers all of the said road tax; that the .plaintiffs paid the first installment of the taxes certified to the county auditor, paying same in ignorance of the facts relating to the purported levies; that plaintiffs afterwards paid the second installment, paying same with knowledge of all the facts concerning the said levy and return thereof; that in paying such second installment the payments were all voluntary, with the exception that one of the plaintiffs made an oral protest at time of payment. There is no finding as to the grounds upon which such protest was made.

[1, 2]   It seems to us clear that, under the overwhelming weight of authority, a mere verbal protest, with no reasons stated therefor, is unavailing; also that one who knows the facts rendering a tax invalid must not only protest, but must wait until active steps to enforce payment are taken before he pays the tax. Any other payment is voluntary, except that courts universally hold a payment under duress, as well as under protest, is not voluntary. Lamborn v. Dickinson Co., 97 U. S. 181, 24 L. Ed. 926; Town of Phoebus v. Manhattan Social Club, 105 Va. 144, 52 S. E. 839, 8 Ann Cas. 667; Johnson v. Crook Co., 53 Or. 329,

100 Pac. 294, 133 Am. St. Rep. 834, and notes; Monaghan v. Lewis, 5 Pennewill (Del.) 218, 59 Atl. 948, 10 Ann. Cas. 1048, and notes. See generally notes 94 Am. St. Rep. 427-439. There are no facts found showing payment under duress by any plaintiff.

[3] The above disposes of any claim for the return of the second installment of taxes paid. It is claimed, however, that as plaintiffs were in ignorance of the facts at the time of paying the first installment to the county auditor, they have a right to recover, even though the payments were voluntary. It would seem that any such rule, unless safe guarded by statutes, would be very dangerous and clearly against public policy. There may be extreme cases justifying such a holding, as was the case in Wooley v. Staley, 39 Ohio St. 354, where a party paid a large sum under representation by the county auditor that it was collectible, when in fact no such sum had been or could be levied. We are not called upon to pass on the question of whether this money could have been recovered if the facts invalidating the tax did not appear of record. The public records in the township clerk's office showed the invalidity of the attempted levies, and public policy requires that the taxpayer be presumed to know the facts shown by such public records, and be bound by such knowledge. Any other rule would work disastrous results, especially where there may have been large levies for public improvements, and the improvements have been made and the funds collected and paid out therefor, before any claim made for return of taxes paid. It must also be remembered that this tax is not one that could not have been legally levied; but it was a tax which the town board were authorized under certain circumstances to levy. If this were a tax for which there was in law no authorization, a different rule might apply, though even then, under the great weight of authority, there could be no recovery where payment was voluntary. See Desty on Taxation, 791; Cooley on Taxation (2nd. Ed.) 805; Tatum v. Town of Trenton, 85 Ga. 468, 11 S. E. 705; Welton v. Merrick Co., 16 Neb. 83, 20 N. W. 111; Taylor v. Board, etc., 31 Pa. 73, 72 Am. Dec. 724; Tupelo v. Beard et al., 56 Miss. 533. We quote with approval the following from Gould v. Board, etc., 76 Minn. 381, 79 N. W. 530.

"But the chief ground upon which a reargument is asked is

that the court did not give due weight to the fact that, according to the complaint, the plaintiff paid the tax in ignorance that any part of it was illegal. It should be kept in mind that the rules which apply to actions to recover back money paid by one person to another do not apply, to their full extent, to actions to recover back from a county, town, or other municipality money in payment of taxes illegally or irregularly assessed or levied. There are certain considerations of public policy which must necessarily be taken into consideration. If a party could recover back from the public whenever there was some illegal or irregular action on the part of public officers in the assessment or levy of the tax, merely because he was ignorant of such illegality or irregularity at the time he paid the tax, the public finances would be thrown into chaos, and frequently municipalities would be reduced to utter bankruptcy. Municipalities do not guarantee the taxpayers correct action on the part of their officers. Irregular action does not necessarily injure the parties concerned, and, when it does, the remedies given by review, appeal, or by way of defense to proceedings to enforce the tax are supposed to afford full redress. Cooley, Tax'n, 566. In this case the property was subject to taxation. The illegality or irregularity complained of consisted exclusively of the action of the state board of equalization in raising the assessed value of one class of real estate in the town without making the same increase on another class. This illegality or irregularity appeared from the public records. Plaintiff had the means of discovering this, and he was just as much bound to inform himself of the fact as were the public authorities. Every man is supposed to know the law. If plaintiff was ignorant of the facts of which he now complains when he paid the tax, it was because he failed to avail himself of the means of information which were open to him. Having paid his tax without investigation, and without duress of either person or property, the payment must be deemed voluntary."

The trial court correctly held that plaintiffs could not recover any part of the taxes paid by them to the county treasurer.

Such court also held that the money received by the county treasurer under the purported levy for "road and bridge purposes" had not lawfully been appropriated for such purpose by any vote of the electors of the defendant township, and said court

decreed that no part of such fund so collected should be paid out for such purposes until such time as the said electors, at a proper meeting, had voted to so appropriate it, or until the defendant Bloodgood had, in a proper action, recovered a judgment against the township. Plaintiffs appealed from the whole of the judgment rendered by the trial court; but, as we read their brief, they virtually concede that, if this money is not repaid to them, it should be subject to the payment of Bloodgood's claim under either one of the conditions precedent prescribed by the trial court. We are not therefore called upon to determine whether the said court was correct in that part of its decree relating to the payment of the Bloodgood claim.

The judgment of the trial court is affirmed.

CORSON, J. I am unable to concur in the views expressed by the majority of the court in this opinion, and in my judgment, under the findings of fact, the court's conclusions of law and the judgment of the court are erroneous, and the judgment and order denying a new trial should be reversed. The findings of the court, which substantially follow the allegations of the complaint, are, in substance, as follows:

That at the annual meeting of Clifton township, held on March 3, 1909, "$800 for all town levy was agreed upon," and that no other tax appears upon the records of said meeting as having been levied by the electors of said township for that year. That thereafter, on March 31, 1909, the township clerk of Clifton township filed with the county auditor of Beadle county a certificate in words and figures as follows:

" * * * To T. C. Young, County Auditor, Beadle County, S. Dak.: I hereby certify that the annual meeting held in the township of Clifton, county of Beadle, South Dakota, on the 2nd day of March, A. D. 1909, the following amounts were voted to be raised for taxation of said township, as appears from the record in my office) for the year 19—, which amounts were also levied by the township board of said township at their regular meeting held on the 30th day of March, A. D. 1909, viz.:

For township ....................................' .... Dollars $100
For Bond and Sinking .......................... Dollars ....

For Bridge and Road ....................... Dollars $800
For Fire Guard ........................... Dollars ....

"J. A. Miner,

"Township Clerk of the Township of Clifton,

    Beadle County, S. D."

—except that the figures $100 which were in pencil, were not in said certificate at the time it was filed. That on April 29, 1909, the town board of supervisors took the following action: "We, the board of Clifton township, levy one hundred dollars as general funds such as may come before the board." That thereafter the township clerk filed a further certificate in words and figures as follows: "Huron, S. D., May 7, 1909. To Co. Auditor, Beadle Co. —Sir: The board of Clifton Twp. levy One Hundred Dollars as general funds. J. A. Miller. Twp. Clerk." That thereupon the figures $100. above referred to, were written in said certificate in pencil.

That thereafter the clerk of said township, at the direction of the supervisors, spread a levy of $800 as a road tax, and on July 12, 1909, certified the same as a road tax on the several road overseers in Clifton township. That of the tax so spread and certified there was assessed $55.75 against the plaintiff Charles Miner, and $21.53 against the plaintiff Ben B. Thurston, which amounts the plaintiffs paid in labor or money in the said township road district, and the other taxpayers in said township paid the tax so assessed against them in labor or in money.

That, pursuant to the certificate filed with the county auditor, the county auditor spread the tax mentioned therein on the tax books against the assessable property situated in Clifton township. That the taxpayers of said township, including the plaintiffs, in paying the taxes demanded by the county treasurer, due and payable during the year 1910 for state, county, and township purposes, paid to the county treasurer the amount included in their taxes certified to the county auditor. That the plaintiffs paid the first installment without notice or knowledge of any irregularity in levying or returning the tax to the county auditor. Before paying the second installment, the plaintiffs discovered the facts about the levy and the return thereof, and the plaintiff Charles Miner, when paying the county treasurer, orally objected to the payment of the amount of the tax.

That about July 13, 1910, the supervisors of said township made an agreement with one Bloodgood to grade a certain piece of road, and that the grading provided for in said agreement was done and completed by said Bloodgood, for which he claims the sum of $520, which amount the supervisors of Clifton township have agreed to allow.

That the sum of $800 levied by the annual town meeting of the electors of said township was and has been regarded by the supervisors of said township as having been levied for road and bridge purposes.

From its findings, the court concludes, as a matter of law, as follows:

"[1] That the levy of $800 made at the town meeting of the electors of Clifton township on March 3, 1909, was irregular, and the return of such meeting, made by the clerk of said Clifton township to the auditor of Beadle county on March 31, 1909, was irregular, and that the levy made at such town meeting, having been for the sum of $800 for all town levy, and not having been specified that the same was for bridges, road, or highway labor, the township supervisors were without power to appropriate the same for the improvement of highways until properly authorized by the electors of said township.

"[2] That the plaintiffs are entitled to an order restraining the defendants from using said fund to pay the claim of E. J. Bloodgood until the electors, at a regular or special town meeting called for that purpose, authorize such disbursement of said funds, or until said Bloodgood may recover a judgment by civil action against said township, in a court of competent jurisdiction, for any sum that may be found due him and decreeing such payment to be made.

"[3] That the taxes collected by the treasurer of Beadle county, amounting to $800, and by him paid to the treasurer of Clifton township, was not paid under duress, but was voluntarily paid by the several taxpayers paying same, and an order should not be made, distributing or returning the said $800 now in the hands of said treasurer of Clifton township to the several taxpayers who paid the same." Judgment was thereupon entered in accordance with the above conclusion of law.

It is disclosed by the record that upon the filing of the com-

plaint the court issued an injunction restraining the treasurer of Clifton township from paying the said Bloodgood claim, or otherwise disposing of said money received by him from the county treasurer. It will be observed that the $800 voted by the electors in March, 1909, does not specify the particular purpose for which the levy was made, and that the $800 so voted was not only certified to the county auditor and spread upon the tax list against the property in said township, but was also spread upon the tax list of the township and paid by labor or money in full by the taxpayers of that township, and that the payment made to the county treasurer of the $800 by the taxpayers of the township constituted a double payment of that sum by them.

Appellants assign as error the court's conclusions of law and the judgment entered thereon. The appellants contend that the court erred in assuming that the electors had power to use, control, or disburse the fund referred to, and that the court should have enjoined the defendants—the township supervisors and the treasurer of said township—from paying over any of said fund to said Bloodgood; that the court erred in its decree dissolving the injunction theretofore granted, restraining them from paying the Bloodgood claim; that the court erred in assuming and deciding, as a matter of law, that the electors of said township had power to appropriate said funds, or that said electors had power to authorize payment of the same to Bloodgood; that the court erred in not granting the appellants a decree distributing and refunding to plaintiffs the money paid by them as taxes under the tax levy involved in this action.

It is contended by the respondents that, although the proceedings of the township meeting held on the 3rd of March, 1909, and the certificate made by the township clerk to the county auditor, were in some respects irregular, they did not render the levy of the taxes void, and that, the money paid by the plaintiffs having been voluntarily paid, it remained in the hands of the township treasurer properly, subject to be disposed of by the electors at the regular town meeting. or one called for that special purpose, and that the eelctors at such town meeting had the power to authorize the board of supervisors to pay therefrom the Bloodgood claim.

The $800 was in effect levied for road purposes, as appears

by the subsequent levy of the supervisors, and the plaintiffs and the other taxpayers of the township have paid, either in money or work, the amount of the $800 thus levied upon each of them. The collection, therefore, of the $800 by the county treasurer was clearly unauthorized, and the amount so collected belongs to the taxpayers of the township, including the plaintiffs; and the plaintiffs are legally and equitably entitled to have the portion of the fund so paid by them returned to them. In my view the electors have no power to dispose of the fund.

Section 1008, P. C., provides as follows: "The electors of each town have power at their annual meeting:   *  *  * 8. To vote to raise such sums of money for repairing and constructing bridges, and for necessary town charges, as they may deem expedient, not exceeding an amount which will necessitate a total greater levy than five mills, and for fire guards not exceeding an amount which will necessitate a total greater levy than five mills. They shall also vote the amount necessary for highway labor and road tax." It will be observed that in the first part of this paragraph roads are not mentioned, and that the part referring to roads is a separate clause:

Section 2138, P. C. provides:

"The electors of each township shall have power at their annual town meeting on the first Tuesday of March in each year to vote to raise such sums of money for repairing and constructing bridges, and for the necessary town charges as they may deem expedient.   *  *  * They shall also vote the amount necessary for highway labor and road tax.

"2. The township board of supervisors must meet on the last Tuesday of March in each year and must levy the highway labor and road tax for the ensuing year and perform all the duties required of them in sections 1682 and 1683 of this code. Said road tax shall not exceed fifty cents on each on hundred dollars valuation, and shall be levied on the equalized assessment of the preceding year.

"3. The township board, on the last Tuesday in March in each year, also shall make the levy for town purposes for the ensuing year; Provided, that no tax for town purposes or for highway labor and road purposes shall exceed the amount voted to be raised for each at the annual town meeting.

"4.  *  *  *  It shall be the duty of the township clerk immediately after the township board of supervisors have made the levy of taxes to notify the county auditor of the county in which the township is situated, of the amount levied, after the following form, viz:

For general purposes ...............................dollars
For bridge purposes ....·............................dollars
For fire guard purposes .............................dollars
For interest fund ............................ .........dollars
For sinking fund ...................................dollars

"The county auditor shall calculate the rate and enter the same on the county tax list to be collected as county taxes are collected."

It will be observed that by the provisions of these sections the electors are authorized to vote the amount of the road and highway tax, limited as prescribed by the section; and it is made the duty of the town board of supervisors to levy the said tax so voted by the electors at the town meeting upon the various taxpayers of the township. The road and highway tax is separate and distinct from the other town taxes which are to be placed upon the tax list of the county and collected by the county treasurer. The only portion of the tax, therefore, authorized to be certified by the town clerk to the county auditor in the case at bar was the $100 levied for town purposes, had that been actually voted; but as it was not apparently voted by the electors for town purposes, the township supervisors had no authority to levy that sum, not being authorized to do so by the electors, and the town clerk had no authority, therefore, to certify the same to the county auditor. In view of these various provisions of the Code, above quoted, I am of the opinion that the levy and collection of the $800 and $100 purported to have been certified by the town clerk to the county auditor were illegal and void. The powers of electors at their annual town meeting and the powers and duties of the board of supervisors and road overseers are very fully considered and discussed in Aldrich et al. v. Collins, 3 S. D. 154, 52 N. W. 854.

I am further of the opinion that, as the illegality of the proceedings was not apparent upon the face of the record, the payment by the plaintiffs of the tax so appearing to be assessed against them on the tax list of the county treasurer was not a vol-

untary payment ,and that the plaintiffs are entitled to recover the sum so paid by them from the town treasurer. Very vew, if any, questions are presented to the court that are more difficult for a proper determination than the one presented on this appeal; and the decisions are so numerous and conflicting that it is difficult to extract from them any definite or general rule applicable to this class of cases, and no useful purpose would be served by a review of them.

In American & English Encyclopedia of Law, vol. 27, p. 764, it is stated: "If it can be shown that a payment of taxes was induced through fraud or mistake of fact, the money so paid may be recovered back. But, as a general rule, money paid under a mistake or in ignorance of the law cannot be recovered"—citing a large number of authorities.

In the case of Strusburgh v. City of New York, 87 N. Y. 452, the learned Court of Appeals of New York held, as appears by the headnote: "Where an assessment for a local improvement in the city of New York, valid upon its face, and an apparent lien upon the lands assessed, but which is in fact by reason of facts dehors the record illegal and void in part, is paid by the owner of the lands in ignorance of the illegality, he may, on discovery thereof, maintain an action in equity against the municipality to set aside the assessment as to the illegal excess, and to recover back the same." In its opinion the court says: "Third. An action can be maintained to vacate an assessment which is a lien upon land, and thus a cloud upon title, when the assessment is in fact invalid, and the invalidity does not appear upon the face of the assessment, and will not necessarily appear in any proceeding taken by a purchaser under the tax sale for nonpayment of the assessment, to recover possession of the land. This is so, because in such a case the action comes under one of the recognized heads of equity jurisprudence. Upon the facts alleged in the complaint in this action, if the assessment remained unpaid, it is conceded that an action could be maintained by the plaintiff to vacate it as a cloud upon his title, but by payment it has ceased to be a cloud; and hence no action is needed, or can be maintained, to vacate it on that ground. The assessment has not been vacated; and hence, if this were merely an action at law to recover back the money paid upon the assessment, as it was assumed to be

in the court below, it could not be maintained.  But this action is in equity, and the relief prayed is for judgment declaring the assessment invalid to the extent of the overpayment claimed by the plaintiff, and then to recover the amount of such overpayment. Why may not such an action be maintained? There is no case to be found in the books holding that it cannot be.  There can be no objection that both kinds of relief are sought in the same action.  *  *  * But there is a distinct head of equity jurisprudence under which the plaintiff can maintain his action.  He paid this money under a mistake, a mistake not induced by or due to any negligence or fault on his part, so far as we can perceive from the facts alleged in the complaint; and against this mistake equity has jurisdiction to relieve.  *  *  * It will not be against public policy to allow an action, under the circumstances of this case, to be maintained.  The assessments have been collected, and the revenue for public purposes has been realized.  It will be no more embarrassing for a municipality to be compelled to pay this debt than to be compelled to pay a debt of any other kind.  Under such circumstances there can be no public policy which will be served or promoted by depriving a citizen of the money justly due him, and leaving it where it has been placed by the illegal action of a municipality or its officers."

In the later case of Bruecher v. Village of Port Chester, 101 N. Y. 240, 4 N. E. 272, the Court of Appeals held, as appears by the headnote, as follows: "Where an assessment for a local improvement, valid on its face, is void in fact, on the ground that the assessors had no jurisdiction to impose the same, an action to recover money paid in satisfaction thereof may be maintained without first having the assessment set aside or vacated." In the opinion the court stated: "If the assessment had been merely irregular, informal, or unjust, the assessors having jurisdiction to impose the same, then, before an action to recover back the money paid in satisfaction thereof could be maintained, it would have been necessary to have the same vacated or annulled in some way, and thus removed, as an obstacle, out of the way.  But where an assessment is in fact utterly void, on the ground that the assessors had no jurisdiction to impose the same, then an action may be maintained to recover back money paid in satisfaction thereof without first having the assessment set aside or vacated."

The Supreme Court of Kentucky held, according to the head-note, in the case of City of Newport v. Ringo's Executrix, 87 Ky. 635, 10 S. W. 2, that "taxes paid under a mistake of law may be recovered back," and that learned court supported its ruling by the following reasoning: "It is too well settled in this state to need the citation of authority that if money be paid through a clear mistake of law or fact, essentially affecting the rights of the parties, and which in law or conscience was not payable, and should not be retained by the party receiving it, it may be recovered. Both law and sound morality so dictate. Especially should this be the rule as to illegal taxation. The taxpayer has no voice in the imposition of the burden. He has the right to presume that the taxing power has been lawfully exercised. He should not be required to know more than those in authority over him; nor should he suffer loss by complying with what he bona fide believes to be his duty as a good citizen. Upon the contrary, he should be prompted to its ready performance by refund to him any illegal exaction paid by him in ignorance of its illegality; and certainly in such a case, if he be subject to a penalty for non-payment, his compliance under a belief of its legality, and without awaiting a resort to judicial proceedings, should not be regarded in law as so far voluntary as to affect his right of recovery." See, also, Jex v. Mayor, 103 N. Y. 536, 9 N. E. 39; Baker v. Panola Co., 30 Tex. 86; Galveston v. Sydnor, 39 Tex. 236; Louisville v. Anderson, 79 Ky. 334, 42 Am. Rep. 220; Torbitt v. Louisville (Ky.) 4 S. W. 345; Delano v. New York, 32 Hun. (N. Y.) 144; Woolley v. Staley, 39 Ohio St. 354.

Under the provisions of the Code of this state, taxes are a lien upon the property assessed, and therefore constitute a cloud upon the title of the owner of the property until either paid or canceled by a court of competent jurisdiction. It would seem to necessarily follw, therefore, that the conclusions of the court and the judgment entered thereon cannot be sustained, and that the $800 paid over to the township treasurer should be repaid to the taxpayers of Clifton township who contributed to said fund. The judgment of the circuit court should, therefore, be reversed, so far as it requires the treasurer to hold said sum, to be disposed of as the electors of Clifton township may by vote determine, and that a judgment be entered, enjoining the town treasurer from

paying out any portion of said fund for any purpose other than to the taxpayers of said township who have contributed to the same, and that the plaintiffs be adjudged to be entitled to the money so paid by them to the county treasurer and paid over by him to the township treasurer.

HANEY, J., concurs in the views expressed in the above dissenting opinion.