THE UNDERWOOD TYPEWRITER COMPANY *vs.* FREDERICK S. CHAMBERLAIN, TREASURER OF THE STATE.

First Judicial District, Hartford, October Term, 1917.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, JS.

It is not to the interest of the State that those whom it seeks to tax should have to refuse to pay their taxes in order to test their validity. Such a course, if largely followed, might cause a serious inconvenience to the State in the discharge of its governmental obligations.

A property owner who, with knowledge of the facts, voluntarily pays a tax assessed upon him or his property, cannot recover the amount so paid, even though the Act under which the tax was laid afterward turns out to be unconstitutional. But if the payment is made under protest and in order to avoid the burdensome penalties

prescribed by the Act for its nonpayment, such payment is not, in contemplation of law, voluntary, but one made under moral duress arising from the coercive features of the Act; and therefore the property owner is not prevented by such payment from subsequently attacking the constitutionality of the Act in a suit to recover the money so paid.

Sections 27 and 28 of Chapter 292 of the Public Acts of 1915, providing for an application for relief to the Superior Court by any corporation aggrieved by the tax laid against it under Part IV of the Act, and prescribing the powers and duties of the court thereon, are remedial in their character and entirely independent of and separable from the other provisions of the Act.

These sections (27, 28) were intended, not to limit the relief to a mere mathematical calculation affecting the amount of the tax—an act purely administrative in its nature—but to give the taxpayer adequate remedy at law, and entitle him to a review of the entire proceedings *de novo*, and to a determination of whether any part of the tax is unjust or illegal.

Argued October 3d—decided December 15th, 1917.

ACTION to recover the amount of a tax laid under Part IV of the Act of 1915, alleged to have been paid by the plaintiff under protest and to escape irreparable injury to its property, brought to the Superior Court in Hartford County where a demurrer to the prayers for relief was sustained (*Burpee, J.*) and judgment rendered (*Gager, J.*) for the defendant, from which the plaintiff appealed. *Error; demurrer overruled.*

*Eugene D. Boyer* of New York City, and *Arthur L. Shipman,* for the appellant (plaintiff).

*George E. Hinman,* Attorney-General, and *James E. Cooper,* with whom was *Charles W. Cramer,* for the appellee (defendant).

WHEELER, J. The single ground of the appeal is the alleged error in sustaining the demurrer to the claims of relief. The complaint alleges that the plaintiff is a corporation organized under the laws of Delaware, and

engaged in manufacturing and in the sale and rental of its products and merchandise in Connecticut, but that the greater part of its business in Connecticut is in the performance of its agreements for sale and leases made in other States and foreign countries; that by far the larger part of its capital and assets are invested and located outside this State and used for its interstate commerce business; that the greater portion of its earnings and income is derived from such interstate commerce, and is received, held and possessed outside this State.

It further alleges that Chapter 292 of the Public Acts of 1915 provides that each company carrying on business in this State shall "pay a tax annually to the state upon the net income for its fiscal or calendar year next preceding, . . . upon which income such company is required to pay a tax to the United States"; that in the case of a company carrying on business outside the State and deriving profits principally from the sale or use of tangible personal property, such proportion of the net income shall be apportioned to this State "as the fair cash value of its real estate and tangible personal property in this state on the date of the close of the fiscal year of such company in the year next preceding is to the fair cash value of its entire real estate and tangible personal property then owned by it."

The complaint also alleges that § 23 of the Act of 1915 imposes upon the Tax Commissioner the duty of determining the tax laid on each company, and of mailing a statement of such tax to each company; and that it provides that the tax shall be payable on or before the first day of August in each year, and if unpaid after the first day of August, after ten days' notice and demand by the State treasurer, that there shall be added five per cent to the amount of the tax, and interest at the rate of three-fourths of one per centum per month upon such

tax, and "such tax, if unpaid, shall constitute a lien upon the real estate of such company in this state, such lien to be in force from the filing of a certificate . . . in the land records."

The complaint further avers that the Tax Commissioner, prior to July 1st, 1916, acting under this Act, apportioned the sum of $629,668.50 of the applicant's net income on which the tax was imposed by the United States for the year ending December 31st, 1915, as the portion of its income for that year upon which it should pay to the State such tax, and thereupon assessed against this applicant two per cent of such income amounting to $12,593.37.

It is further alleged that acting under protest, the plaintiff, in order to prevent the imposition of the penalty of the Act, and without waiving its right to claim that no such tax was due or collectible from it by the State, and that the requirement for such return was unconstitutional, made and filed such return, and on July 29th, 1916, paid said tax under protest and to avoid irreparable injury through the enforcement of the penalties and coercive features of the Act.

The complaint further alleges that the sum determined as the net income upon which this tax is computed is in excess of forty-seven per cent of the total income earned and received by the plaintiff, and the greater portion was earned and received without the State and in conducting its interstate business, and not over $40,160.27 thereof was earned or received in its business carried on in Connecticut.

Upon these facts the plaintiff claimed relief by way of a judgment (1) that the Act, in so far as it attempts to tax the plaintiff, is in violation of the United States Constitution and void, (2) directing the treasurer of the State of Connecticut to repay to it the amount of such tax with interest.

The defendant demurred to the claims of relief, principally upon three grounds: 1. That §§ 27 and 28 of the Act, under which the plaintiff's action was brought, did not give the court jurisdiction. 2. That the plaintiff could not seek the remedy provided by the Act whose validity it assailed. 3. That the plaintiff, upon the facts, paid the tax voluntarily, and hence could not claim the Act to be unconstitutional.

The plaintiff says in its brief: "The ultimate question in the case is whether or not Part 4 of Chapter 292 of the Public Acts of 1915, is constitutional, or does invade the exclusive power of the Federal Congress over interstate commerce, or violate the 4th, 5th, and 14th Amendments to the Constitution." The demurrer does not raise this question, but limits its contentions to an attack upon the right of the plaintiff to maintain its appeal, because of its own conduct in paying the tax, and of the limited scope of the remedy provided by the Act upon which the plaintiff predicates its action.

*First.* If the plaintiff, with full knowledge of the facts, paid this tax voluntarily, he cannot recover it, even though the tax were invalid and paid under protest. *Sheldon* v. *South School District,* 24 Conn. 88, 91. The tax in question was paid "under protest, in order to escape irreparable injury through the enforcement of the penalties and coercive features of the Act," the complaint alleges. The admissions of the demurrer go no further than the terms of the Act.

The tax would become due under the Act on or before August 1st. Ten days thereafter, and upon notice and demand of payment by the State treasurer, five per centum of the unpaid tax would automatically be added to it, and interest at the rate of three-fourths of one per centum per month upon such tax from the date the tax became due, would be added.

Further, the unpaid tax became a lien upon the real

estate of the Company within the State from the time the tax became due and was unpaid, and from the filing of a certificate, signed by the State treasurer, in the land records of the town. Since the filing of the certificate might be contemporaneous with the date when the tax became due and unpaid, the Company was in danger of having this lien placed upon its property from such date.

The Company was confronted with this situation: Though it contested the validity of the tax successfully it could not prevent the filing of the lien upon its property. And if it were unsuccessful, no matter what merit its claims possessed, the lien would attach, and the five per centum penalty and the nine per centum interest would accrue. The lien might prove a serious burden upon its credit, while the actual pecuniary losses, suffered or threatened, involved a hardship and loss which no company should be compelled to face. It could not measure the extent of these penalties, because it could not know the time the tax litigation would take. It would be unfair to it to compel it to take this risk of loss as the condition of its right to test the validity of the tax. It should have that right without condition, and by a clear and certain remedy.

This is common practice and it is sound public policy. It is not to the advantage of the State that those whom it seeks to tax should refuse to pay their taxes in order to test their validity. Such a course, if largely followed, might cause the State more than an inconvenience in the disturbance of the budget upon which the payment of its governmental obligations depended. The more orderly course is a compliance with the law by a payment, reserving the right to contest the validity of the required payment.

The payment of the tax in question was not a voluntary one, it was in the contemplation of the law a

payment under duress of the penalties of the Act. And this we hold from a consideration of the provisions of the Act, and without a consideration of any remedies by way of distress which the State might have for the enforcement of payment of this tax. A payment of a tax made to avoid the onerous penalties of the Act imposing the tax for its nonpayment, is not a voluntary payment. The more modern doctrine supports this view. *Robertson* v. *Frank Brothers Co.*, 132 U. S. 17, 10 Sup. Ct. 5; *Atchison, T. & S. F. Ry. Co.* v. *O'Connor*, 223 U. S. 280, 285, 32 Sup. Ct. 216.

We reached practically the same conclusion in *Seeley* v. *Westport*, 47 Conn. 294, 299, on a petition to restrain a town and its officers against a levy upon real estate. We said: "We think therefore that the law is so that a man may protect his land from a sale, or prevent a cloud upon his title, by paying the tax and have his remedy to recover it back if the tax was illegal and unjust."

It was not necessary for the plaintiff to wait until demand was made by the State treasurer; the tax was due August 1st, it was paid July 29th, and the lien might have been made effective on August 1st. The compulsion of the law began when the tax was due, and it would have served no purpose to have permitted the defendant to have made demand, or to have been about to file the lien, before paying the tax. The plaintiff pursued the orderly course, it paid under protest and upon pressure of the law's duress.

*Second.* Another ground of demurrer is that the plaintiff cannot attack the constitutionality of an Act whose remedy it seeks; and also, that if one part of an Act is void all parts are void except such as are wholly separable.

This latter principle is sound. 1 Lewis' Sutherland, Statutory Construction (2d Ed.) § 297. It has no

present application. The remedies provided by §§ 27 and 28 are entirely independent of the body of the Act. No reason has been presented, and we think of none, why the remedy provided by the Act may not stand, even though some other part of the Act fall.

*Third.* Finally, the demurrer asserts that the purpose and scope of the remedy provided by §§ 27 and 28 of the Act are administrative and relate to a correction in the amount of the tax, and the repayment of the excess, and not to a determination of the validity of the tax. And the State treasurer contends that the court has no power under these sections other than to determine whether the law has been complied with in determining the amount of the tax.

Section 27 provides that "any company aggrieved because of the tax laid . . . may . . . apply to the Superior Court . . . for relief, and said court shall fix a time when and place where such corporation may show cause why such tax should be changed." This is the usual language of our statutory appeals, except that instead of "may appeal" we have "may apply to the Superior Court for relief." The court which is to hear the cause and grant relief is one of general jurisdiction, and the language of the Act does not, at least expressly, attempt to restrict its jurisdiction. The corporation is granted, upon the appeal, the right to apply for relief, and this must mean either for legal or equitable relief. It is also accorded the right to show cause why such tax should be changed. This must mean a legal cause, not a cause outside the jurisdiction.

Our statutes furnish instances where appeals are given in the language used in § 27. General Statutes, §§ 2354, 4747, 2048, 2056, 4772 and 2627. "Appeal," and "apply for relief," or "application for relief," are obviously used in the statutes in the same sense and for the same purpose. In *Hall* v. *Meriden,* 48 Conn. 416,

we construed a provision in the charter of Meriden which provided for an application for relief to the Superior Court by any person aggrieved by an appraisal of damage or assessment of benefits. The plaintiff claimed that the court had no power to reduce the damages awarded, that it could only raise them, or leave them as they were. The plaintiff supported his claim by contending that the application for relief granted differed from an appeal from such assessments. The court, through JUDGE LOOMIS, said (p. 427): "Now it cannot be that the legislature intended a totally different rule of procedure in the two cases where the proceeding is called 'an application for relief,' from that which is to be followed in the others. It is in every case in effect an appeal from a lower tribunal to a higher one, and must have the ordinary incident of an appeal." This decision is decisive.

Sections 27 and 28 were intended to give the taxpayer an adequate remedy at law, otherwise the taxpayer would be left to his remedy by injunction, and if exercised this would prevent the collection of the funds required to administer the State government, and if the taxpayer should not succeed he would subject himself to the penalties of the Act accruing during the pendency of the action. The remedy given by these sections gave the taxpayer a review of the entire proceedings *de novo* in court, and he, by paying the tax under protest, protected himself from the penalties of the Act and at the same time conserved the State treasury.

The relief afforded by these sections is not confined to a mathematical calculation, to the correction or change in the amount of the tax. It contemplates a determination of whether the tax, in whole or part, is unjust or illegal. That may require a finding of the exact amount of the tax, but its primary purpose is to find out if any

part of the tax is unjust or illegal. Such a finding is the exercise of a judicial function, while a mere mathematical calculation would be an administrative act. It is not to be presumed that the General Assembly intended to impose upon the Superior Court administrative functions; and a fair construction of these sections does not lead to this conclusion.

There is error, the judgment is reversed and the Superior Court directed to overrule the defendant's demurrer to the claims for relief.

In this opinion the other judges concurred.