WILLIAM H. PITT, INDIVIDUALLY AND AS ADMINISTRA-
TOR (ESTATE OF WASHINGTON H. PITT) *vs.*
TOWN OF STAMFORD.

WILLIAM H. PITT, INDIVIDALLY AND AS ADMINISTRA-
TOR (ESTATE OF WASHINGTON H. PITT) *vs.*
CITY OF STAMFORD.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 9th—decided August 8th, 1933.

*Maurice J. Buckley,* for the appellant (defendant City of Stamford).

*Thomas J. Ryle,* for the appellant (defendant Town of Stamford).

*Raymond E. Hackett,* for the appellee (plaintiff).

HINMAN, J.  The plaintiff is administrator of the estate and sole heir of Washington H. Pitt who died April 11th, 1931.  For many years the decedent owned a tract of land located on the corner of Main and Pacific Streets in Stamford, having a frontage on Main Street of approximately one hundred and one feet and three inches, and a depth on one side of sixty feet and on the other side of seventy-three and one half

feet. In October, 1925, Pitt filed a tax list in which
he designated this property as consisting of one house
lot and described it as being one hundred feet front
and having an average depth of fifty feet. No owner's
valuation was given. The assessors, for purposes of
taxation, divided the tract into two lots, one being
allocated a frontage on Main Street of forty-two feet
and the other a frontage of fifty-eight feet, and placed
a valuation of $46,400 on the second lot, which is the
one to which the present controversy relates. In 1926,
1927, and 1928 Pitt filed tax lists the same as in 1925,
and in each of these years the same action was taken
by the assessors and the same valuation placed upon
the premises. Pitt neglected to file a list for 1929 and
the assessors made one for him, listing his property
as consisting of two lots having a frontage of forty-
two feet and fifty-eight feet respectively. The valua-
tion ascribed by the assessors to the second lot was
$92,800 and to this there was added a ten per cent
penalty. In 1930 Pitt filed a list in which his property
was described as two lots of a frontage of forty-two
and fifty-eight feet respectively, no owner's valuation
was stated, and the valuation placed by the assessors
on the second tract was $81,200.

In 1925 the assessors inaugurated a new land valua-
tion system under which unit front foot valuations
were applied where the lot was of a normal or one
hundred per cent depth, and the normal depth of lots
situated on Main Street was established at one hun-
dred and twenty-five feet, with the proviso that a lot
having a depth of between one hundred and ten feet
and one hundred and twenty-five feet would be as-
sessed as a normal lot, but a lot having a seventy-three
and one half foot depth would be assessed at seventy-
five per cent of the valuation that would be ascribed
to it if of the normal depth. A general tax map de-

lineating the sizes, dimensions, and shapes of the various parcels of land located in Stamford and subject to assessment therein was used by the assessors in making their assessments and was considered by them as accurate. This map erroneously showed Pitt's second lot as having an average depth of one hundred and fourteen feet, and the lot was accordingly assessed at a normal or one hundred per cent valuation instead of seventy-five per cent as it should have been, having a depth of but seventy-three and one half feet. In assessing the plaintiff's property upon the basis of a depth of one hundred and fourteen feet the assessors acted in good faith, but an inspection of a map of the property which had been filed by Pitt in the town clerk's office in 1921 would have disclosed that the premises were, instead, seventy-three and one half feet in depth. The taxes payable by Pitt to the defendant were computed upon the basis of the valuations so placed on the lot, and bills therefor were paid by the plaintiff or his intestate without question. As a result taxes were paid to the city from 1925 to 1930 inclusive aggregating, with interest, $1728.22 and to the town $1800.78 more than if the property had been assessed on a basis of seventy-five per cent of normal depth.

Upon the facts found, including those above outlined and others hereinafter mentioned, the trial court concluded that the mistake resulting in the over-assessment arose solely from the conduct of the defendants' agents, that the over-payments were made by the plaintiff and his intestate under mistake as to their rights and duties and were not voluntary, and that the plaintiff is entitled to recover them. Attack upon these conclusions is the substance of this appeal, the ultimate question presented being whether payments

made under such circumstances are recoverable as having been made under mistake.

Under the settled general rule, if the plaintiff, with knowledge of the facts, paid the taxes voluntarily, he could not recover them back even though they were in amount in excess of what he should have been required to pay. *Underwood Typewriter Co.* v. *Chamberlain,* 92 Conn. 199, 203, 102 Atl. 600; *Morris* v. *New Haven,* 78 Conn. 673, 675, 63 Atl. 123; *Sheldon* v. *South School District,* 24 Conn. 88, 91; 3 Cooley, Taxation (4th Ed.) § 1283, p. 2566. There is no claim or suggestion that payment of these taxes was made under threat of levy, or to avoid irreparable injury through enforcement of onerous penalties, or under other coercive circumstances such as have characterized payments of taxes held not to have been voluntary and therefore not within the above-mentioned rule. *Verran Co.* v. *Stamford,* 108 Conn. 47, 49, 142 Atl. 578; *Connecticut Light & Power Co.* v. *Oxford,* 101 Conn. 383 (126 Atl. 1) and cases cited at p 391; *Underwood Typewriter Co.* v. *Chamberlain, supra;* note, 64 A. L. R. p. 10 *et seq.* If there is a right of recovery it must arise from such mistake of fact and lack of knowledge and means of knowledge thereof on the part of the plaintiff's decedent as would permit recovery, notwithstanding that the payments were voluntary in all other respects. The mistake must be that of the taxing officers and not made by the taxpayer, materially contributed to by him, or attributable to his own neglect of some legal duty. 3 Cooley, Taxation, § 1295, p. 2582; 61 C. J. p. 991. Obvious reasons of public policy require limitation of recovery back because of mistake in assessment of taxes voluntarily paid, particularly where the error relates to facts which are within the actual or imputed knowledge of the individual property owner. Assessors have

to deal with a multitude of tax lists, involving many pieces of property the details as to which, relevant and largely determinative of the valuation to be placed upon them, are familiar to the owner, who is therefore in a position to give accurate information regarding them, while the practical limitations upon the assessors as to time and in other respects preclude resort to land records and other sources of information as to the property covered by these lists. To accord a right of recovery in every case where, after assessments have been made without appeal, budgets and tax rates predicated thereon, the taxes paid without objection or protest, and the moneys expended for the public purposes, it afterward develops that some mistake has been made in the assessment, would work disastrous results. It must of necessity be confined to extreme and exceptional cases. *Miner* v. *Clifton Township*, 30 S. D. 127, 137 N. W. 585.

Our statutory provisions clearly indicate that the burden as to furnishing the facts upon which valuations for taxing purposes are to be based is upon the property owner. Section 1126 of the General Statutes requires that in giving in his list he "make a separate description of each parcel of real estate," or, in lieu thereof, where reference can be made to a map on file in the town clerk's office, by such reference. The forms for tax lists prescribed by the state board of equalization, pursuant to § 1111, call for specification of the size, location, and boundaries of each lot. Section 1141 requires the assessors to arrange the tax lists in alphabetical order and lodge the same in the town clerk's or assessors' office "for public inspection." In case of error in the doings of assessors in matters of valuation, speedy and simple remedy is afforded by appeal by the person aggrieved to the board of relief under § 1194. The nature of the remedy provided by

the statute and the time limitation imposed by § 1195 appear to contemplate that the taxpayer will seasonably take the available and proper means to ascertain whether the valuation placed upon his property is correct, and if it is erroneous resort to appeal. While, as stated in *Goddard* v. *Seymour*, 30 Conn. 394, 400, each taxpayer is not required to personally examine the grand list and other ingredients to ascertain if a tax is valid, he is not relieved of all responsibility as to the facts pertaining to his own assessment. "It is a legal duty, we think, of the owner of property to see that it is properly assessed, and ample provision is made for correcting mistakes." *San Diego Land & Town Co.* v. *La Presa School District*, 122 Cal. 98, 100, 54 Pac. 528; *Jackson* v. *Atlanta*, 61 Ga. 228.

Not only actual knowledge of the existence of mistake, but also failure to use means of acquiring it possessed by the taxpayer or so accessible to him that such failure constitutes negligence, precludes recovery. *Walser* v. *Board of Education*, 160 Ill. 272, 43 N. E. 346; *Bateson* v. *Detroit*, 143 Mich. 582, 160 N. W. 1104; *Indianapolis* v. *McAvoy*, 86 Ind. 587, 589. "Mistake or ignorance of fact is not ground [for recovery] where the public records show the facts, since public policy requires that taxpayers be presumed to know facts appearing of record." 3 Cooley, Taxation, § 1295, p. 2583.

In the present case the plaintiff's intestate, in his 1925 tax list, described his real estate as one "house lot," on the back gave the dimensions as one hundred feet front, average depth fifty feet, and specified abutting streets and owners, but bounded it on the south by "Pitt" although he listed and, so far as the record shows, owned no other land, and the map filed by him in 1921 indicated the land on the south to be owned by one Rimland. No owner's valuation was inserted

in the column provided for the purpose. The lists filed in 1926, 1927, and 1928 were the same as the 1925 list except that two lots were specified. The same valuation was placed by the assessors. In 1929 and 1930 the lots were listed as having a frontage of forty-two and fifty-eight feet respectively, giving no average depth and no southern boundary.

It is to be noted that the lists filed in 1925, 1926, 1927, and 1928 palpably understated the average depth as fifty feet, although the land was sixty feet deep on one side and seventy-three and one half feet on the other, and misstated the ownership of the land to the south, the boundary of which was determinative of the depth. Also, Pitt had constructive notice, from the lists filed for public inspection, of the action of the assessors in dividing his land into two lots (and actual notice as appears from his designation of two lots in the lists after 1925) and of the assessors' valuation of them. While the finding is that he did not know of the unit front foot system of valuation inaugurated in 1925 and followed thereafter, it is apparent that any reasonable investigation made by or for him of the valuation placed upon his land would have developed the formula employed, disclosed also the error in the general tax map as the depth of the lot, which was the basis on which the valuation was computed, and doubtless would have produced the same prompt correction of the resulting over-assessment as was made as soon as the error was discovered.

As to the assessors, they were not bound by the inaccurate specifications in the several lists and were not required to resort to the map on file in the town clerk's office in the absence of a reference thereto in the lists, as provided in § 1126 of the General Statutes. *Wilcox* v. *Madison,* 103 Conn. 149, 153, 130 Atl. 84. It appears from the finding that the general tax map

which the assessors used to ascertain the dimensions was prepared for the purpose of setting forth the location, size, and shape of all taxable lots and was regarded as accurate. Especially in view of the magnitude of the task imposed upon them by their duties as a whole, it was not incumbent upon them to go beyond this map and search the land records of the title to Pitt's property in order to supply the deficiencies in description and correct the misstatement as to average depth in the description given by him in his lists, or in making out a list for him in 1929.

Pitt was clearly chargeable with such contribution to the mistake by the defects in his lists and such negligence in not investigating the valuations ascribed to the lot in question and resorting to means of knowledge available to him as to deprive him and his representative, the plaintiff, of the right to recover, on the ground of mistake, the taxes which he paid without coercion and without question, protest, or reservation of rights.

*Bridgeport Hydraulic Co.* v. *Bridgeport,* 103 Conn. 249, 130 Atl. 164, which is the plaintiff's main dependence by way of authority, is readily distinguishable. In that case the lists of taxable property of the plaintiff for the years involved (1915-1922), so far as appears, were in due form, accurate, and complete. No error was claimed as to the description of the property or the valuation placed upon it. The mistake arose subsequent to the filing and completion of the lists in that in the abstracts of the grand lists filed by the taxing authorities the assessed value of all of the plaintiff's taxable property was entered only in the tax list and abstract of the second district, although considerable of its property was located in the first district and should have been placed in the list for that district and taxed at a lower rate. This error re-

sulted in the rendition to and payment by the plaintiff, without knowledge of it, of tax bills carrying the higher rate of taxation as applied to all its property in the city. The trial court found that these mistakes "were not chargeable in any degree to the plaintiff, but were . . . solely chargeable to the assessors or tax commissioner of the defendant city, and were followed by corresponding errors in the office of the city auditor and tax collector." The plaintiff's officials checked the amounts of the aggregate assessment shown by the tax bills to see that they conformed to the value for taxation stated in the tax lists filed, but did not examine the rate books or make all of the mathematical calculations applying the tax rates to the assessments. It was held (p. 256) that "in relying upon the correctness of the bills presented, the plaintiff acted reasonably. It in no way contributed to the errors and mistakes made by the defendant."

In *Bilton Machine Tool Co.* v. *United Illuminating Co.*, 110 Conn. 417, 148 Atl. 337, the classification of rates for electric current and the procedure in making up the charges and bills against the plaintiff were exclusively within the knowledge and control of the defendant, and the errors therein were not contributed to by the plaintiff or ascertainable by it by the exercise of reasonable diligence. Moreover, considerations of public policy to which we have adverted as applicable to tax cases are not involved to the same extent in cases of mistake as between private parties.

In the present case the existence of the mistake was readily discoverable by the plaintiff's decedent through inspection of the completed list, opportunity for which was provided under § 1141 of the General Statutes, and the consequent further investigation which reasonable prudence would suggest, and means for which were available. We conclude, therefore, that by rea-

son of material contribution by his decedent to the mistake in valuation and neglect of seasonable attention, incumbent upon him, which would have disclosed the error, the plaintiff is not now entitled to recovery of any of the taxes in issue.

There is error; the cases are remanded to the Superior Court with direction to enter judgment for the defendant in each case.

In this opinion the other judges concurred.