[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs Irving Morris and Edward Williams (Morris), by way of a four count revised complaint, allege that the defendant Shawmut Bank's assignor, Connecticut National Bank (Bank), extended credit to the plaintiffs' corporation, Supac Systems, Inc. ("the corporation"), by virtue of a commercial revolving loan agreement. The plaintiffs allege that as a condition of the loan, the defendant required the plaintiffs to execute limited written guarantees for the loan, and that Bank also obtained as collateral security interests in the assets of the corporation.
The plaintiffs allege that following a default on the loan, the Bank asserted that it was entitled to take immediate possession of the corporation's assets. The plaintiffs allege that, following a demand by the defendant, they personally paid a proportionate share of the corporation's debt, as required by the guarantee agreement. The plaintiffs also allege that they surrendered all of the corporation's assets to the defendant in order to satisfy the outstanding debt with the proceeds of the sale of the assets. The plaintiffs claim that they were prompted to surrender the corporation's assets to the defendant by the defendant's assurances that it would deal with the assets in a commercially reasonable manner, in order to maximize the value of the collateral and thereby reduce the plaintiffs' liability on the guarantees. CT Page 10680
The plaintiffs allege that the defendant failed to act in a commercially reasonable manner in the disposition of the collateral by failing to adequately safeguard the Corporation's assets, by failing to attempt a sale of the corporation's service business, and by failing to use diligence in collecting the corporation's receivables. The plaintiffs allege that the Bank's behavior with respect to the disposition of the corporation's assets caused the plaintiffs to incur greater liability on the guarantee.
In the first count of the complaint, the plaintiffs allege that the defendant's failure to act in a commercially reasonable manner with respect to the corporation's assets constituted a breach of the covenant of good faith and fair dealing in the loan agreement and the guarantee. In the second count, the plaintiffs claim damages resulting from the defendant's alleged failure to act with respect to the collateral in accordance with General Statutes §§ 42a-9-501 through 42a-9-507. In the third count, the plaintiffs allege that the defendant's conduct with respect to the collateral, and the defendant's failure to fulfill its representations through counsel that it would deal with the collateral in a commercially reasonable manner, constituted a deceptive and unfair trade practice in violation of CUTPA, General Statutes § 42-110b et seq. In the fourth count, the plaintiffs seek a declaratory judgment with respect to their rights and liabilities under the loan and guarantee agreement.
The defendant has moved to strike the first, third and fourth counts of the revised complaint on the ground of legal insufficiency.
 "The purpose of a motion to strike is to `contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted.' In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Citations omitted.) Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185 (1988).
Novametrix Medical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210,214-15, 618 A.2d 25 (1992). "The grounds for a [motion to strike] may be that the facts, as pleaded, do not constitute a CT Page 10681 legally cognizable claim for relief." Nowak v. Nowak, 175 Conn. 112,116, 394 A.2d 716 (1978).
 A. Count One: Breach of Covenant of Good Faith and Fair Dealing
The defendant moves to strike the first count of the complaint, arguing that no independent cause of action exists for a claim based on a breach of an implied covenant of good faith and fair dealing. The plaintiffs concede this point in their memorandum, noting that "[c]laims of breaches of the implied covenant of good faith and fair dealing have been upheld where there were also breaches of the underlying agreements at issue."
The plaintiffs argue that the rights and remedies provided by Article Nine of the Uniform Commercial Code ("UCC"), which controls secured transactions, are supplemented by the common law. In support of this proposition, the plaintiffs rely on General Statutes § 42a-1-103, which provides that "unless displaced by the particular provisions of [the UCC as adopted by Connecticut, General Statutes § 42a-1-101 et seq.], the principles of law and equity . . . shall supplement its provisions." The plaintiffs note that under the common law of Connecticut, "[e]very contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." (Citations omitted.) Habetz v. Condon, 224 Conn. 231,238, 618 A.2d 501 (1992). In addition, the plaintiffs note that General Statutes § 42a-2-203, dictates that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Therefore, the plaintiffs argue that an independent action for breach of the covenant of good faith and fair dealing exists with respect to the sale of collateral under a secured transaction, in addition to the rights and remedies provided by Article Nine of the UCC.
The court finds that General Statutes §§ 42a-9-501 to 42a-9-507
provide the exclusive rights and remedies for parties to a secured transaction following default and has displaced the common law. General Statutes § 42a-9-501(2) provides that "[a]fter default, the debtor has the rights and remedies provided in this part, those provided in the security agreement, and those provided in section 42a-9-207." The Official UCC comments[1] to General Statutes § 42a-9-102 notes ("The main CT Page 10682 purpose of this section is to bring all consensual security interests in personal property or fixtures under this Article [Article Nine], except for those excluded by section 9-104."). The Official UCC comments to General Statutes § 42a-9-101 states, "This Article [Article Nine] sets out a comprehensive scheme for the regulation of security interests in personal property and fixtures."; see also Connecticut Bank Trust Co. v. Incendy,207 Conn. 15, 21, 540 A.2d 32 (1988).
The comprehensive scheme of Article Nine indicates that the common law covenant of good faith and fair dealing is displaced by the specific provisions of the UCC.
This conclusion is supported by the provisions of General Statutes § 42a-9-504, which dictate that "every aspect of the disposition [of collateral] including the method, manner, time, place and terms must be commercially reasonable." As noted by the Official UCC Comments to General Statutes § 42a-9-507, the "principal limitation on a secured party's right to dispose of collateral is the requirement that he proceed in good faith (Section 1-203) and in a commercially reasonable manner (Section 9-504). . . . [Section 9-507] further provides for damages where the unreasonable disposition has been concluded." Article Nine incorporates the UCC's requirements of good faith and fair dealing as provided by General Statutes § 42a-1-203. See alsoGaynor v. Union Trust Co., 216 Conn. 458, 478, 582 A.2d 190
(1990); F W Welding Services, Inc. v. Pen-Smith, Inc.,38 Conn. Sup. 455, 458, 451 A.2d 286 (App. Sess. 1982) (same proposition); see also Washburn v. Union Nat. Bank and TrustCo., 502 N.E.2d 739, 743 (Ill.App. 1986). The court holds that an independent claim for a breach of a covenant of good faith and fair dealing may not be pleaded in conjunction with a cause of action under Article Nine based on the allegedly commercially unreasonable disposition of collateral.
In count one, the plaintiffs allege in addition to a claim under Article Nine an independent cause of action for the breach of the implied covenant of good faith and fair dealing arising out of the same facts. Since Article Nine provides the exclusive remedy for parties to a secured transaction after default, the motion to strike the first count of the revised complaint should be and is granted.
B. Count Three: CUTPA Violation
CT Page 10683
The plaintiffs allege in the third count that, in order to prompt the plaintiffs to surrender possession of the corporation's assets, the defendant represented that it would dispose of the assets in a commercially reasonable manner and in failing to do so, violated CUTPA.
The defendant moves to strike the third count on the grounds that the plaintiffs' CUTPA claim is legally insufficient because among other grounds, the plaintiffs do not allege immoral, unethical, oppressive, or unscrupulous, conduct on behalf of the defendant.
In determining whether a practice violates CUTPA, a court should employ the following criteria:
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].
Sanghari v. Paul Revere Life Ins. Co., 214 Conn. 303, 311-12,572 A.2d 307 (1990).
The defendant argues that the plaintiffs' CUTPA claim is legally insufficient because the plaintiffs have failed to allege that the defendant's conduct was immoral, unethical, oppressive, or unscrupulous, relying on S.M.S. Textile Mills,Inc. v. Brown, Jacobson, Tillinghast, Lahan King, P.C.,32 Conn. App. 786, 795, 631 A.2d 340, cert. denied, 228 Conn. 903, ___ A.2d ___ (1993). In that case, the plaintiff had alleged that a law firm's negligence and simultaneous representation of the plaintiff and an adverse party constituted a CUTPA violation. The appellate court affirmed the trial court's decision striking the CUTPA claim on the ground that an allegation of a conflict of interest alone would not provided a basis for finding that the conduct was immoral, unethical, unscrupulous and oppressive.
In the present case, the plaintiffs have alleged that the defendant made misrepresentations through counsel that it would CT Page 10684 maximize the value of the security, and then disposed of those assets in a commercially unreasonable manner in violation of General Statutes § 42a-9-504, et seq. and the Bank did not fulfill its promise. There is no allegation that in making that promise, the Bank or its attorneys acted intentionally or fraudulently to create a false impression. Construed most favorably, the complaint does not contain allegations of oppressive, unscrupulous, or unethical conduct necessary for a CUTPA claim. Normand Josef Enterprises v. Connecticut NationalBank, 230 Conn. 486, 524. Accordingly, the court strikes the third count.
C. Count Four: Declaratory Judgment
The defendant moves to strike the fourth count on the ground that the claim for declaratory relief claimed is inappropriate where a claim for monetary damages is available. The defendant argues that the purpose of the declaratory judgment is to provide the parties with a judicial determination of how to act on a disputed legal issue. The defendant stresses that such a remedy is inappropriate in the present case because the parties have already acted with respect to the guarantee and loan agreement and, therefore, money damages may be claimed. The plaintiff argues that the claim for declaratory relief in the fourth count is appropriate because the declaratory judgment relief will be as speedy, effective and complete as a claim for monetary damages based on the guarantee and the loan agreement.
 The purpose of a declaratory judgment action, as authorized by General Statutes § 52-29 and Practice Book § 390, is to "secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties." (Emphasis added.) Connecticut Assn. of Health Care Facilities, Inc. v. Worrell, 199 Conn. 609, 613, 508 A.2d 743 (1986). General Statutes § 52-29(a) requires that a declaratory judgment "declare rights and other legal relations." (Emphasis added.) Similarly, Practice Book § 390 requires that the plaintiff be in danger of a loss or uncertainty "as to his rights or other jural relations," and that there be a bona fide "issue in dispute or substantial uncertainty of legal relations." (Emphasis added.) Thus, "[d]eclaratory relief is a mere procedural device by which various types of substantive claims CT Page 10685 may be vindicated." Luckenbach Steamship Co. v. United States, 312 F.2d 545, 548 (2d Cir. 1963).
(Footnote omitted.) Wilson v. Kelley, 224 Conn. 110, 115-16,617 A.2d 433 (1992).
 Section 390(c) of the Practice Book allows the trial court wide discretion to render a declaratory judgment unless another form of action clearly affords a speedy remedy as effective, convenient, appropriate and complete. . . . Therefore a successful motion to strike an action for a declaratory judgment upon the ground of available alternative means of redress . . . must show that the court could not in the exercise of sound discretion permit the action to proceed.
(Footnote omitted; citations omitted.) England v. Coventry,183 Conn. 362, 365, 439 A.2d 372 (1981). An action for declaratory relief is inappropriate where there also exists a simple claim for money damages based on an alleged violation of rights already claimed to have been committed. Avonside, Inc. v.Zoning Planning Commission, 153 Conn. 232, 239, 215 A.2d 409
(1965). In Avonside, Inc. v. Zoning Planning Commission, supra, 153 Conn. 239, the plaintiffs, real estate developers, paid under protest a development fee required by the Town of Avon's zoning regulations. The plaintiffs subsequently brought a declaratory judgment action challenging the regulation's validity and claiming reimbursement of the fees. The court held that
 [l]est the declaratory judgment procedure followed in this case be taken as a precedent approved by this court, we point out that each plaintiff, instead of seeking a declaratory judgment, should have brought a simple action claiming monetary damages in the amount illegally exacted from it, and by it paid under protest, under the rule of cases such as Nichols v. Bridgeport, 23 Conn. 189, 200, Lewis v. Hull, 39 Conn. 116, 119, and Underwood Typewriter Co. v. Chamberlain, 92 Conn. 199, 204, 102 A. 600. . . . An action of that type would necessarily have put in issue the validity of the regulation and have given the plaintiffs the only relief to which they showed themselves entitled on the facts [i.e., the money damages constituting the reimbursement of fees], or which they properly sought CT Page 10686 in their pleadings.
Avonside, Inc. v. Zoning Planning Commission, supra, 153 Conn. 239-40.
In the present action, in addition to the claim for declaratory relief with respect to the loan agreement, the plaintiffs claim monetary damages arising out of the sale of collateral pursuant to the loan agreement and the guarantee. The court finds the relief requested in the second count will provide a more convenient, complete, and appropriate remedy for determining the plaintiffs' rights and liabilities under the loan and guarantee. Practice Book § 390(c). The court accordingly grants the defendant's motion to strike the fourth count of the complaint.
/s/ McDonald, J. McDONALD