[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM DATED OCTOBER 25, 1995
This action is a two-count appeal pursuant to General Statutes §§ 12-89, 12-117a and 12-119 from the decision of the Hartford board of tax review denying the plaintiff's claim for a tax exemption and a refund of taxes previously paid.
The plaintiff, Wadsworth Atheneum ("Atheneum"), has filed a motion for summary judgment as to both counts of its appeal on the ground that there remain no genuine issues of material fact, and, therefore, based on the applicable law, the plaintiff is entitled to judgment.
The plaintiff claims that a single-family residence known as the Austin House located at 130 Scarborough Street, Hartford, is exempt from the payment of property taxes to the city of Hartford for two reasons. First, the plaintiff claims that the state legislature granted a specific exemption from taxation to all property owned by the Atheneum and related to the Atheneum's purposes pursuant to Special Act 73-130. Second, the plaintiff claims that General Statutes § 12-81(7)[1] exempts the plaintiff's property from taxation.
In support of its motion, the plaintiff has filed the affidavits of Christina S. Pitcher, associate director of finance and personnel of the Atheneum, and Eugene R. Gaddis, curator of the Austin House, with supporting documentation. The plaintiff also filed a supplemental affidavit by Eugene R. Gaddis.
The defendant, city of Hartford ("City"), objects to the motion for summary judgment on the ground that there are outstanding genuine issues of material fact and, therefore, the plaintiff is not entitled to judgment as a matter of law. The CT Page 12443-a City has attached to its memorandum in opposition to the motion for summary judgment a copy of the Hartford Municipal Code showing the permitted uses in the zone within which the Austin House is located, and affidavits made by Robert Hartzell, assessor for the City, and Abraham Ford, the zoning administrator.
The function of the court in considering a motion for summary judgment is to determine whether any genuine issues of fact exist. Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031
(1988). It therefore becomes necessary for us to examine the allegations in the complaint that have been admitted by the defendant in its answer, and the affidavits supplied by the parties to determine if they are sufficient to show that it is "quite clear what the truth is" and that there are no genuine issues as to any material fact. State v. Goggin, 208 Conn. 606,616, 546 A.2d 250 (1988). We recognize that the moving party, in a motion for summary judgment, carries the burden of demonstrating the absence of issues of material fact. Nolan v.Borkowski, supra. The opposing party, on the other hand, has the burden of showing the existence of issues of material fact. SeeRawling v. City of New Haven, 206 Conn. 100, 104, 537 A.2d 439
(1988). We view the facts presented, however, "in the light most favorable to the nonmoving party." Id.
The following facts are undisputed. The Atheneum is a nonprofit organization that is tax exempt as a charitable and educational institution pursuant to § 501(c)(3) of the Internal Revenue Code. Contributions made to the Atheneum are deductible by donors under § 170(a) of the Internal Revenue Code.
The Atheneum's building located at 600 Main Street in Hartford is exempt from the payment of property taxes to the City. The building at 600 Main Street in Hartford is a public art museum conducting charitable and educational activities on the premises.
According to the affidavits of Eugene R. Gaddis and Christina S. Pitcher, the following facts are disclosed. The Austin House was conveyed to the Atheneum in 1985 as a charitable gift by Helen Goodwin Austin and her children, Sarah G. Austin and David E. Austin. The Austin House was built in 1930 by A. Everett Austin, Jr., a director of the Atheneum from 1927 to 1944. After this gift was made, the executive committee of the board of CT Page 12443-b trustees of the Atheneum voted to accept the Austin House and its contents as part of its permanent collection because of its cultural and artistic importance and its architectural and historic significance. At all times since acceptance of the gift, the Atheneum has owned and operated the Austin House as a full curatorial department of the Atheneum.
The gift of the Austin House, according to the Gaddis affidavit, added to the Atheneum's permanent collection over five hundred works of art, including paintings, drawings, sculpture, furniture, decorative arts, and photographs. These works span three hundred years and come from England, France, Italy, Germany, Holland and the United States. These works of art and artifacts are officially designated as part of the "Austin House Collection," which is governed by a specific written collection policy. The Atheneum continues to purchase, solicit and accept as charitable gifts works of art and other historical material it considers to be appropriate additions to the Austin House Collection. The house itself is a nationally significant example of Palladian architecture as well as Baroque and Bauhaus interior design.
Since 1985, the Atheneum has been identifying, cataloging and interpreting the hundreds of works of art contained in the house. The Atheneum has also appointed a trustee committee to oversee the Austin House, and has created an Austin House Advisory Board. The Austin House needs substantial restoration in order to preserve the characteristics that make it historically and architecturally significant, and the Atheneum has received two grants from the National Trust for Historic Preservation to advance this work. Full-scale restoration is scheduled to begin in 1995.
Since June 1994, the Austin House has been the residence of Dr. Kristin Mortimer, deputy director and chief curator of the Atheneum, who will oversee the house until the restoration work begins. At times between 1985 and 1994, the Austin House has been used as a residence for visiting scholars, conservators, and artists while they were engaged in research, lecturing, treatment of works of art or performances at the Atheneum. The Austin House has also been used on rare occasions as a gathering place for trustees, staff members and guests of the Atheneum, at the invitation of the Austin House Committee or the director of the Atheneum. CT Page 12443-c
On April 19, 1994, the National Parks Service, a division of the U.S. Department of the Interior, notified the Atheneum that the Austin House had been designated as a National Historic Landmark pursuant to the Federal Historic Sites Act of 1935,16 U.S.C. § 461 et seq. There are currently only fifty-two national historic landmarks identified in Connecticut, including the Old State House, the State Capitol, the Mark Twain House, the Hill-Stead Museum and the Yale Bowl.
The Atheneum does not receive any income, except for voluntary donations, from its ownership and use of the Austin House.
Following a city-wide revaluation for the 1989 grand list, the City increased the assessed value of the residence at 130 Scarborough Street from $63,490 to $366,170. The Atheneum appealed the increased assessment to the board of tax review in the spring of 1990. The board of tax review declined to change the valuation of the property. The Atheneum took no further appeal from the decision.
On September 28, 1990, the Atheneum applied by letter to the City's deputy tax assessor for a property tax exemption pursuant to General Statutes §§ 12-81(7) and 12-89. The City notified the Atheneum by letter on October 4, 1990, that the Austin House property was being listed as exempt for the 1990 grand list. Despite the exemption granted by the City for the year 1990, the City sent the Atheneum tax bills totalling $7,731.51. The Atheneum paid these bills. The Atheneum notified the City that the tax bill for the 1990 grand list was inadvertently paid and sought a reimbursement of the payments. The City denied the request by the Atheneum for reimbursement of the sums paid.
On March 14, 1994, the Atheneum appealed to the board of tax review, requesting determination that the Austin House property was and is tax exempt and an abatement of the past erroneous tax levies, interest, and penalties. On April 6, 1994, the board of tax review notified the Atheneum that it had declined to grant a tax exemption to the Austin House.
The City's opposition to the plaintiff's motion for summary judgment focuses on two points. The first point raised by the City is that if the court determines that the Austin House is primarily used by the Atheneum's deputy director for residential CT Page 12443-d purposes rather than as a museum, this would require a factual determination that the use of the premises is related to the charitable or educational purposes of the Atheneum in order to warrant an exemption. Therefore, the City claims that the issues in this case are not properly resolved by way of summary judgment.
The second point raised by the City is that the Atheneum's charter allows it to acquire and hold real property subject to such limitations as may be proscribed by law and therefore property owned by the Atheneum must comply with local zoning law. In support of this argument, the City submits the affidavit of Abraham Ford, zoning administrator. In his affidavit, Ford states that 130 Scarborough Street is located in an R-8 zone. The City argues that the R-8 zone is a very restrictive zone with few permitted uses according to the tables of uses attached to Ford's affidavit. The City claims that, according to the tables of uses, a museum is only permitted in an R-8 zone if it was existing as of February 28, 1968. The City further claims that the Austin House was a private residence until it was conveyed to the Atheneum in 1985. Since the house was not used as a museum until the conveyance to the Atheneum in 1985, it is the City's position that the local zoning laws do not permit a museum to be operated at 130 Scarborough Street. The City contends that if the court finds that a museum is the primary use to which the property is put, it is an illegal use under local zoning ordinances. Under these circumstances, the City claims that the Atheneum is not entitled to a tax exemption for the Austin House, because the use of the property as a museum in an R-8 zone is not a legally permitted use.
The Atheneum was initially created by a legislative enactment entitled "An Act to Incorporate Wadsworth Atheneum" passed in 1842. This special act created the Wadsworth Atheneum, and provided for a site for a building to be constructed in three divisions to be separately used, one for a Gallery of Fine Arts,
another for the Library and other accommodations of the HartfordYoung Men's Institute, and the third for the use of theConnecticut Historical Society." Section 1 of the 1842 Special Act.
Section 6 of the 1842 Special Act recited that "[a]ll the estate, real and personal, which may at any time be owned by said corporation, shall be exempt from taxation so long as the same shall be used and the avails and incomes thereof shall be devoted CT Page 12443-e to, and expended in, the objects and purposes herein before specified." Section 8 of the 1842 Special Act provided that "[t]he exemption from taxation, provided for by the 6th section of this act, shall be subject to the future action and control of the general assembly; and all parts of this act may, by said assembly, be amended, altered or repealed."
The last major change in the charter of the Atheneum occurred in 1973, in Special Act 73-130. Section 2 of Special Act 73-130 recites that,
 [t]he purposes of the corporation shall be exclusively charitable and educational, within the meaning of Section 501(c)(3) and Section 170(c)(2) of the Internal Revenue Code of 1954 . . . In furtherance, and not in limitation, of the foregoing, the corporation is organized for the purpose of operating a public art museum located in the city of Hartford, Connecticut, and conducting all charitable and educational activities reasonably related thereto. In pursuit of the foregoing exclusively charitable and educational purposes, the corporation shall have power to use whatever methods it deems appropriate and advisable, subject to the limitations contained in Section 3 and 4 following, including the power (a) to solicit and receive contributions, grants, donations bequests and devises of real and personal property . . .
Section 11 of Special Act 73-130 recites.
 [t]he following provisions, taken from Special Act of the Connecticut general assembly previously adopted regarding the corporation, shall remain in the force and effect: (a) All the estate real and personal which may at any time be owned by the corporation shall be exempt from taxation so long as the same shall be used and the avails and incomes thereof shall be devoted to and expended in, the objects and purposes herein before specified, provided that said exemption from taxation shall be subject to the future action and control of the general CT Page 12443-f assembly . . .
Special Act No. 73-130 sets up two criteria for determining whether the Austin House qualifies for a tax exemption: (1) the owner of the house, the Atheneum, must be organized for the purpose of operating a public art museum located in Hartford which shall be exclusively charitable and educational pursuant to § 501(c)(3) and § 170(c)(2) of the Internal Revenue Code of 1954, and (2) all activities of the Atheneum must bereasonably related to charitable and educational activities. In order to qualify for a tax exemption under General Statutes §12-81(7), two requirements must be established: (1) The corporation that owns the property must be "organizedexclusively for scientific, educational, literary, historical, or charitable purposes . . ." and (2) the property must be used"exclusively for carrying out one or more of such purposes." (Emphasis added.) Loomis Institute v. Windsor, 234 Conn. 169,175, 661 A.2d 1001 (1995); quoting General Statutes § 12-81(7). The criteria, established under Special Act 73-130 for a tax exemption, we can see, are less restrictive than General Statutes § 12-81(7).
The City does not contest that the Atheneum is organized exclusively for charitable and educational purposes and for the purpose of operating a public art museum,[2] and that the Austin House is located within the City. However the affidavit of Robert Hartzell assessor for the City, recites that the uses of the Austin House, since October 1, 1990, are not "sufficiently related to the charitable and educational purposes of the Wadsworth Atheneum to warrant an exemption." (Affidavit of Robert Hartzell, ¶ 4.) However, Hartzell's affidavit does not contest the facts stated in the affidavits submitted by the plaintiff regarding the uses of the Austin House, but merely states his conclusion that such uses are insufficiently related to the charitable and educational purposes of the Atheneum to warrant an exemption. A counter affidavit must recite facts contravening those offered by the movant and set forth the specific factual evidence demonstrating the existence of a genuine issue of material fact for trial. Citizens National Bankv. Hubney, 182 Conn. 310, 312, 438 A.2d 430 (1980).
Since the City has not submitted affidavits contesting the factual uses of the Austin House as stated in the plaintiff's affidavits, we are required to look at the uses as presented by the Atheneum and determine whether these uses are sufficiently CT Page 12443-g related to the charitable and educational purposes of the Atheneum to warrant a tax exemption. See New Haven Tobacco Co.v. O'Brien, 37 Conn. Sup. 815, 818-19, 438 A.2d 440 (App. Sess. 1981).
The following uses of the Austin House have been made by the Atheneum, and bear repeating:
 1) The contents of the House have become a permanent part of the Atheneum collection because of its cultural and artistic importance and its architectural and historical significance.
 2) The House has been operated as a full curatorial department of the Atheneum.
 3) The House is in the process of being restored as a nationally significant example of Palladian architecture, as well as Baroque and Bauhaus interior design.
 4) The House has been used as a residence of the chief curator of the Atheneum whose function is to oversee the House until restoration begins.
 5) The House has been used as a residence for visiting scholars, conservators, and artists while engaged in research, lecturing, and treatment of works of art at the Atheneum.
 6) The House has been used for meetings of trustees, staff members and guests of the Atheneum.
When we compare the uses of the Austin House as stated by the officers of the Atheneum with the purposes set forth in the Atheneum charter and General Statutes § 12-81(7), we find that the Austin House is "used exclusively for carrying out" these purposes. See Loomis Institute v. Windsor, supra,234 Conn. 177. The City has presented no facts that would show otherwise.
The City also maintains that since the property has been the residence of Dr. Mortimer, its use cannot be determined to be a charitable or educational use without a factual determination of whether the residential use by Mortimer is reasonably related to CT Page 12443-h the charitable and educational activities of the Atheneum. We disagree with the City's conclusion. According to the supplemental affidavit of Eugene Gaddis, Dr. Mortimer's residence in the Austin House has been in the role of caretaker and overseer of the premises, to assist with security and to further the Atheneum's basic mission of preservation of the house and its art collection. The City does not contest the Atheneum's stated purposes for Dr. Mortimer's residence at Austin House. Based upon the uncontested facts, we find that the main purpose of Dr. Mortimer's residence is not for the benefit of Dr. Mortimer, but for the benefit of the Atheneum and furthers the educational purpose of safeguarding and preserving the house and its art collection. See Loomis Institute v. Windsor, supra,234 Conn. 176-78. We see no unresolved factual issues as to the use of the Austin House. We therefore conclude that the Austin House is exempt from taxation both under the provisions of the Atheneum charter and General Statutes § 12-81(7).
The second issue raised by the City is that, assuming arguendo that the primary use of the Austin House has been for a museum, a museum is not allowed under the City zoning ordinances at its present location. The City claims that the Austin House therefore loses its exemption since a museum is not a permitted use.
This specific issue was raised in the case of City ofPittsburgh v. Board of Property Assessment, 50 Pa. Commw. 25,412 A.2d 661 (1980), in which the city of Pittsburgh appealed from a decision of the Court of Common Pleas affirming a decision by the board of property assessment granting a hospital an exemption from real property taxes on certain property.
On appeal, the city of Pittsburgh made the same argument as the City does in the present case. The city of Pittsburgh's argument was that, in order to be tax exempt, the property had to comply with local zoning laws even though it was being used for an exempt purpose. The city of Pittsburgh claimed that the hospital's use of the property was not a permitted use under the city's zoning ordinance and, therefore, the hospital was not entitled to a real property tax exemption.
The hospital in the City of Pittsburgh case derived its exemption from Article VIII of the Pennsylvania Constitution, which provides in part that the general assembly may by law exempt from taxation institutions of purely public charity. The CT Page 12443-i general assembly of Pennsylvania specifically exempted real property owned by hospitals and used in furtherance of their public purposes. The court noted "[t]he City is incorrect, however, in its contention that if the particular use of the property is not within the bounds of the applicable zoning regulations, it cannot be tax exempt. The sole requirement for tax exemption of a charity's property is that the actual, present use be in conformity with the purposes of the charitable institution." City of Pittsburgh v. Board of PropertyAssessment, supra, 663. See also In re Swarthmore College,643 A.2d 1152, 1154 (Pa.Cmwlth. 1994).
We conclude that it is the use of the property in accordance with its statutory exemption, not municipal zoning regulations, that controls the entitlement to a tax exemption. LoomisInstitute v. Windsor, supra, 234 Conn. 177, City of Pittsburghv. Board of Property Assessment, supra, 412 A.2d 662-63. The Austin House's alleged failure to comply with zoning regulations is unrelated to the purposes enumerated in § 12-81(7) and the Atheneum charter. See City of Pittsburgh v. Board of PropertyAssessment, supra, 663. As noted in City of Pittsburgh, the Austin House's failure to conform to the zoning regulations can be remedied in ways other than the denial of a tax exemption.Id.
We next turn to the issue of the Atheneum's claim for a tax refund and an abatement of taxes. Count one of the Atheneum's appeal is based upon General Statutes §§ 12-89 and 12-117a. The Atheneum claims in count one that it is aggrieved by the board of tax review's decision in that the Austin House has been wrongfully assessed for the years 1990 through 1993. Count two of the Atheneum's appeal, which is based upon § 12-119, seeks a determination that its exempt property was wrongfully assessed on the grand list of October 1, 1993. The Atheneum further seeks an abatement of all taxes, interest and penalties erroneously assessed against the Atheneum for the 1991, 1992, 1993 and 1994 grand lists. In addition the Atheneum claims a refund of taxes it inadvertently paid on the 1990 grand list.[3]
A claim that property has been wrongfully or excessively assessed can be statutorily appealed in one of two ways: "(1) to the board of tax review and from there, within two months, to the Superior Court pursuant to 12-111 and [12-117a]; or (2) by direct action to the court within one year from the date when the property was last evaluated for purposes of a taxation pursuant CT Page 12443-j to 12-119." Norwich v. Lebanon, 193 Conn. 342, 346-48, 477 A.2d 115
(1984). A taxpayer can also appeal the denial of any tax exemption by the assessor of a municipality to the board of tax review pursuant to § 12-89. Sections 12-89 and 12-117a
require an appeal to be filed within two months from the time of denial of the exemption by the board of tax review.
In actions brought pursuant to § 12-119, the question before the court is whether the town has levied an illegal tax.Faith Center v. Hartford, 192 Conn. 434, 437, 472 A.2d 16, cert. denied, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984). Levying a tax on property exempt from taxation would be an illegal exaction. Id. Section 12-119 requires an application for relief to be "made within one year from the date [that] the property was last evaluated for purposes of taxation . . ." This one-year limitation in § 12-119 is procedural and personal rather than substantive or jurisdictional and is thus subject to waiver. L. G. DeFelice Son, Inc. v. Wethersfield, 167 Conn. 509,513, 356 A.2d 144 (1975); see Wilson v. Kelley, 224 Conn. 110,123, 614 A.2d 433 (1992). Since the City neither specially pleaded nor otherwise asserted the one-year limitation contained in § 12-119, the Atheneum is not barred from claiming that it was exempt from taxation on the grand lists up to and including October 1, 1994. Accordingly, since we have found that the Austin House was exempt from taxes, we find that the Atheneum is not liable for the unpaid taxes imposed by the City on the Austin House on the list of October 1, 1990 and thereafter.
We find however, that the Atheneum is not entitled to a refund of the taxes it claims it inadvertently paid on the 1990 grand list. "Under the settled general rule, if the plaintiff with knowledge of the facts, paid the taxes voluntarily, [it] could not recover them back even though they were in amount in excess of what [it] should have been required to pay." Pitt v.Stamford, 117 Conn. 388, 392, 167 A. 913 (1933). Here the Atheneum paid the taxes on the 1990 grand list even though it had filed a tax exempt application and had been granted an exemption for the 1990 grand list. While the Atheneum claims that this payment was inadvertent nothing suggests that the payment was coerced, involuntary, or otherwise made under protest. Under these circumstances, the Atheneum is not entitled to a refund of those taxes "inadvertently" paid.[4]
In conclusion, we find that there are no material issues of fact in dispute and that the Atheneum is entitled to an exemption CT Page 12443-k from the real property taxes levied on the Austin House located at 130 Scarborough Street in Hartford. We further conclude that the Atheneum is not entitled to a refund of taxes it already paid on the 1990 grand list, but is entitled to an abatement of all unpaid taxes due and owing on the grand lists of 1990, 1991, 1992, 1993 and 1994.
ARONSON, J.